APPEAL OF BADER COAL COMPANY AND AFFILIATED COMPANIES.

Docket No. 948.    Submitted March 28, 1925.    Decided June 30, 1925.

1. In the absence of proof of value the leases involved in this appeal should not be included in the invested capital of the taxpayers.

2. In the absence of proof of value the taxpayers are entitled to no allowance for exhaustion of leaseholds.

3. On the evidence the taxpayers are not entitled to have their income and profits tax liability for 1917 and 1918 computed under the provisions of section 210 of the Revenue Act of 1917 and section 328 of the Revenue Act of 1918, respectively.

*Wm. A. Seifert, Esq.*, and *Louis E. Rusch, C. P. A.*, for the taxpayers.
*A. H. Fast, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This is an appeal from a determination by the Commissioner of a deficiency in income and profits taxes for the calendar years 1917 and 1918, in the aggregate amount of $78,145.62.

At the hearing the taxpayers abandoned that part of the appeal which related to the determination of the Commissioner for the years 1911, 1912, 1913, and 1916, and the Commissioner waived the question raised by his plea and answer as to the jurisdiction of the Board to consider his determination for the year 1917.

From the pleadings and evidence the Board makes the following

### FINDINGS OF FACT.

1. The Bader Coal Co. is a Massachusetts corporation with its principal office in Boston, Mass. The Boston Collieries Corporation is a Pennsylvania corporation with its principal office in Clearfield, Pa. It was affiliated with the Bader Coal Co. for the years 1917 and 1918. The Tidewater Transportation Co. was affiliated with the taxpayer in 1918. The Bader Coal Co. is a coal brokerage concern, while the Boston Collieries is engaged in the operation of certain coal mines.

2. A deficiency letter was mailed to the Bader Coal Co. on October 20, 1924, showing the determination of the Commissioner, as follows:

*Tax liability.*

| Company. | Year. | Additional tax. | Overassessment. |
|---|---|---|---|
| Bader Coal Co | 1911 | $21.80 | |
| Do | 1912 | 202.94 | |
| Do | 1913 | 150.56 | |
| Do | 1916 | 4,057.99 | |
| Do | 1917 | | $2,283.26 |
| Do | 1918 | 37,980.10 | |
| Total | | 42,413.39 | 2,283.26 |

This appeal was filed with the Board on December 6, 1924.

3. The Commissioner in determining the deficiency against the taxpayers excluded from invested capital $50,000, representing the value of certain leaseholds which the taxpayers claimed were received in payment for capital stock of the Boston Collieries Corporation of a par value of $50,000. He also disallowed a deduction for the depletion of the said leasehold and denied the claim of the taxpayers for relief under the provisions of section 210 of the Revenue Act of 1917 and under section 328 of the Revenue Act of 1918, for the years 1917 and 1918, respectively.

4. The Boston Collieries Corporation was organized on or about March 1, 1917. It issued capital stock in the amount of $100,000 to J. A. Beam, F. B. Layton, Bishop L. Wallace, and Charles E. Andrews. For this stock $50,000 was paid in in cash, but as to whether or not anything further was paid in, the evidence is confusing and

contradictory. Wallace testified that, in addition to the $50,000 cash paid in for stock, leases of a value of $50,000 on certain tracts of coal lands located in Clearfield County, Pa., were also paid in. He also testified that the individuals named above did not own the leases, but only had verbal options for the land from the owners to take the leases later.

5. The parties to one of the leases obtained by the Boston Collieries Corporation and the consideration therefor are shown on the lease as follows:

ARTICLE OF AGREEMENT made and entered into this 19th day of May, A. D. 1917, by and between E. J. Berwind, surviving and liquidating partner of Berwind-White & Company, and Thomas Fisher, Administrator of H. G. Fisher, deceased, parties of the first part, and _____ Boston Collieries Corporation _____ a corporation organized under the laws of Pennsylvania, party of the second part, as follows:

The parties of the first part for and in consideration of the rents, royalties, covenants and agreements, hereinafter reserved and set forth and on the part of the party of the second part to be paid, kept and performed, and in further consideration of the sum of one dollar to them in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, have leased and let and by these presents do lease and let unto the party of the second part for a term of ten years from the First day of April, 1917, with privilege of renewal for a succeeding term of ten years, the exclusive right and privilege to mine and carry away for its own use and benefit all the coal contained in the "A" seam of coal underlying all those parts of two certain tracts of land in Woodward Township, Clearfield County, Pennsylvania, known as the Mathers and Barton tracts  *  *  *.

The parties to the other lease, and the consideration for it, are shown in the following excerpt from the lease:

MEMORANDUM OF LEASE Made and concluded this twenty-fourth day of April, A. D. 1917, by and between Antoinette E. Galvin of Cornwall on the Hudson in the State of New York, sole owner of the interest of John G. Reading Estate, Isaac F. Richey of Trenton, New Jersey, and Charles J. Fisk of Plainfield, New Jersey, Executors of the Estate of A. G. Richey, late of Trenton, New Jersey, and Thomas L. Wallace of Harrisburg, Pennsylvania, representing the Estate of William A. Wallace, parties of the first part, and The Boston Collieries Corporation of Pennsylvania, of the second part;

WITNESSETH, That the Lessors for and in consideration of the covenants, stipulations and royalties, hereinafter specified, on the part of the said Lessees to be kept, performed and paid, do hereby lease, demise and let unto the said Lessees, ALL that the "A" vein or seam of coal in, on and under all those two certain tracts or pieces of land situated in the Township of Bigler and Woodward, Clearfield County, Pennsylvania.

The lease first mentioned provided for the payment of a royalty of 8 cents for each ton of coal mined and the payment of an annual rental of $1,000 for the first year, $1,500 for the second, and $2,000 for each year thereafter, this annual rental to be due and payable on the 25th of April of the succeeding year. The lessee was entitled

to credit against the annual rental the royalty payments made during the year. The second lease involved two tracts of land and provided for the payment of a royalty of 5 cents for each ton of coal mined from one tract and 8 cents for each ton mined from the other. A minimum royalty on 15,000 tons was agreed upon for each tract, and on the second tract an advance royalty of $424 a year was prescribed, this amount to be credited against royalties on coal when mined from the property.

6. On October 7, 1916, the. Bader Coal Co. purchased from a Maine corporation by the same name certain assets. The transaction is shown in the bill of sale, as follows:

That THE BADER COAL COMPANY, a corporation organized and existing under the laws of the State of Maine, in consideration of one dollar and other valuable consideration to it paid THE BADER COAL COMPANY, a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, the receipt whereof is hereby acknowledged, does hereby grant, sell, transfer, assign and deliver unto the said THE BADER COAL COMPANY, a Massachusetts corporation, the following goods, chattels and personal property, namely, the property and assets of the said THE BADER COAL COMPANY, a Maine corporation, owned and held by it on September 1st, 1916, as follows, to wit:

| | |
|---|---:|
| Cash | $21,981.68 |
| Accounts receivable | 168,237.10 |
| Merchandise (coal on hand) | 629.45 |
| Furniture & fixtures | 2,133.40 |
| Stock and securities | 7,000.00 |
| Charter parties & contracts | 110,730.69 |
| Unexpired insurance | 3,050.29 |
| Advances to employees | 985.82 |
| | $314,748.43 |

Together with the good will of the business heretofore conducted by said THE BADER COAL COMPANY, a Maine corporation, said assets and property, however, being conveyed subject to such deductions, and with the benefit of such additions thereto, as have been made by said THE BADER COAL COMPANY, a Maine corporation, between September 1st, 1916 and the date of this instrument.

The taxable income of the Maine corporation for the years 1911 to 1916, inclusive, was $584,695.94. Of this amount $426,000 was income for the year 1916. The invested capital of this corporation for the period 1911 to 1916, inclusive, was $530,705.92. The earnings for the period mentioned, capitalized on a basis of 7 and 10 per cent, would show the value of intangibles as $912,577.50, and $443,021.10 if capitalized on a basis of 10 and 20 per cent.

7. The net income of the Bader Coal Co. and the Boston Collieries Corporation for the year 1917, as determined by the Commissioner, was $394,827.38. Their invested capital was determined to be $409,510.36. The percentage of excess-profits tax to income determined by the Commissioner was 47.5 per cent. The salaries

paid to officers by the Bader Coal Co. for 1917 were $22,000. The salaries paid to officers by the Boston Collieries Corporation are not shown.

8. The liquid capital of the Bader Coal Co. for the year 1917 was invested in stocks, Liberty and other bonds, and was not used in the operations of the company. The business resulted from contracts procured by the officers for the purchase and sale of coal. The sales were made on a cash basis, while the coal was purchased on 30 or 60 day terms, so that in most cases the company received its money from sales before it was required to pay for its purchases.

9. The gross volume of business of the Bader Coal Co. for the year 1918 was $3,278,702.73. The salaries paid for that year to officers were $33,000. The total salaries paid to officers, including salaries of affiliated corporations, were $96,353.34. The record does not show the amount of invested capital used in determining profits taxes for the year 1918; neither does it show the amount of the net income nor the amount of the taxes finally determined to be due.

10. The Fort Pitt Coal & Coke Co. and the Bixler Coal & Coke Co. were also engaged in the coal brokerage business during the year 1917. Evidence was submitted by the taxpayer to show a comparison between the tax finally determined against these companies by the Commissioner and the tax determined to be due from the taxpayers. The evidence submitted discloses the following facts with reference to the two companies mentioned above, for the year 1917:

| | Invested capital. | Gross sales. | Net income. | Profits tax. | | Salaries. |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | Amount. | Per cent of net income. | |
| Fort Pitt Coal & Coke Co___ | $44,115.87 | $3,169,215.66 | $105,515.16 | $18,349.06 | 17.31 | $12,500.00 |
| Bixler Coal & Coke Co_____ | 42,000.00 | 2,629,000.00 | 127,000.00 | _____ | 17.6 | 21,592.00 |

The taxes of these companies, as shown in the table, were determined under the provisions of section 210 of the Revenue Act of 1917.

11. The percentage of excess-profits tax to taxable income paid by the Bixler Coal & Coke Co. for the year 1918 was 12½ per cent. This tax was determined without the benefit of the provisions of section 328 of the Revenue Act of 1918.

12. The Tidewater Transportation Co. was classified by the Commissioner as a corporation with nominal capital for the year 1917, but was not classified as a personal service corporation for the year 1918, during which time it was affiliated with the Bader Coal Co.

DECISION.

The determination of the Commissioner is approved.

OPINION.

LANSDON: Three questions are presented in this appeal: (1) Whether the Commissioner erred in excluding from the taxpayers' invested capital the alleged value of leases to certain coal lands, which it is claimed were exchanged for stock of the Boston Collieries Corporation; (2) whether the taxpayers are entitled to a deduction for the exhaustion or depletion of these leaseholds; and (3) whether or not the tax of these corporations should be computed for the year 1917 under the provisions of section 210 of the Revenue Act of 1917 and for the year 1918 under the provisions of section 328 of the Revenue Act of 1918.          •

It is contended for the taxpayers that the leaseholds mentioned were acquired (pursuant to options) by the Boston Collieries Corporation in exchange for $50,000 par value of its capital stock. It is further contended that the value of the leases so acquired was at least $50,000, and that this amount should be included in the invested capital of the taxpayers.

The Boston Collieries Corporation was organized on or about March 1, 1917. It issued capital stock in the amount of $100,000, all of which was issued to Charles E. Andrews, J. A. Beam, F. B. Layton, and Bishop L. Wallace. For this stock $50,000 was paid in in cash, and the question to be determined is whether or not anything further was received by the corporation for the stock. These leases show that they were made directly to the Boston Collieries Corporation by the owners of the land and could not have been exchanged for the stock of the corporation by the individuals mentioned above. Furthermore, Wallace testified that he and his associates did not own the leases, but procured verbal options to take the leases later. It thus appears that these so-called options were all that could have been exchanged for the stock, and the record fails to show that these options were valuable. No evidence was submitted to show the terms of these options, neither do the facts disclose any consideration therefor.

The taxpayers have not shown that anything of value was paid to the Boston Collieries Corporation, in addition to the $50,000 cash, for its capital stock. The Board is of the opinion, therefore, that the $50,000 alleged value of the leases was properly excluded from invested capital.

The evidence adduced discloses no value upon which an allowance should be made for exhaustion or depletion of the leases. The leases

were not paid in for stock, and the taxpayers have not shown that anything of value was actually exchanged for them. The consideration recited by the leases is rents, royalties, covenants, and agreements. One of the leases provided for a royalty of 8 cents on each ton of coal mined and an annual rental of certain specified sums. It also provided that any royalties paid during the year should be credited against the annual rental. The other lease provided for payment of a royalty of 5 cents per ton on coal mined from one tract of land and 8 cents per ton on coal mined from another, with a minimum annual royalty on 15,000 tons from each tract. It also provided for payment of advance royalties of $424 a year on the second tract, this amount to be credited against royalties on coal mined later. These leases do not show any cost which could be spread over the life of the leases. The taxpayers do not show that they have acquired in these leases anything of value which is subject to the provisions of the Revenue Act of 1917 or the Revenue Act of 1918, allowing deductions for exhaustion or for depletion.

The taxpayers contend that they are entitled to consideration and relief under section 210 of the Revenue Act of 1917 and section 328 of the Revenue Act of 1918, for the years 1917 and 1918, respectively. This claim is based upon the allegation that there are certain abnormalities affecting the invested capital and income of the taxpayers which prevent the Commissioner from satisfactorily determining their invested capital for the years in question, and that this is evidenced by a gross disproportion between the tax computed without the benefit of the relief sections and the tax computed by comparison with corporations engaged in a like or similar trade or business.

One of the abnormalities which the taxpayers contend was present in the business was good will purchased from the Bader Coal Co., a Maine corporation, but which was never capitalized. The taxpayers have attempted to show the value of this good will by capitalizing the earnings of the Maine corporation for the years 1911 to 1916, inclusive, on the basis of 7 per cent for tangibles and 10 per cent for intangibles. The Board is of the opinion that the taxpayers refuted their theory of intangible values, based on earning power, by their efforts to show the large profits for the years in question resulted wholly from the personal activities of their officers.

It is also contended that the salaries paid during the years 1917 and 1918 were abnormally low, but, for the year 1917, no evidence was submitted with reference to salaries paid by the Boston Collieries Corporation, and for neither year did the taxpayers show what normal salaries were.

For the year 1918 special relief was claimed for the additional reason that the Tidewater Transportation Co., which was affiliated for the year 1918, was classified as a corporation without any in-

vested capital or only a nominal capital for the year 1917, and was not classified as a personal service corporation for the year 1918. No evidence was submitted, however, to show that the Tidewater Transportation Co. had any income for 1918 or that the income of the taxpayers was in any way increased as the result of the affiliation.

The final reason advanced by the taxpayers for special relief was that their invested capital was not used in their business. It appears that coal was purchased on 30 and 60 day terms and sold for cash, and that under this arrangement it was not necessary to use the invested capital in the business. The invested capital as determined by the Commissioner for the year 1917 was $409,510.36, and it has not been shown that the tax computed on the basis of that amount of invested capital is disproportionate to the tax if computed by reference to the tax of representative corporations engaged in a like or similar trade or business.

For the year 1917 evidence was submitted showing the invested capital, gross sales, net income, salaries, and percentage of profits tax to net income of the Fort Pitt Coal & Coke Co. and the Bixler Coal & Coke Co., which were engaged in the coal brokerage business. These corporations are not proper comparatives, since in both cases the tax was determined under the provisions of section 210. Furthermore, the fact that the Boston Collieries Corporation was not engaged in the coal brokerage business but in the operation of mines under the leases previously mentioned was not taken into consideration.

For the year 1918 the only comparative offered was the percentage of excess-profits tax to taxable income paid by the Bixler Coal Co. No evidence was submitted to show the invested capital, the gross income, the net income, or the amount of tax paid for the year 1918 by either the taxpayers or the Bixler Coal Co.

The claim of the taxpayers for relief under section 210 of the Revenue Act of 1917 and under section 328 of the Revenue Act of 1918 for the years 1917 and 1918, respectively, must therefore be denied.