*244 OPINION.
Lansdon:
Three questions are presented in this appeal: (1) Whether the Commissioner erred in excluding from the taxpayers’ invested capital the alleged value of leases to certain coal lands, which it is claimed were exchanged for stock of the Boston Collieries Corporation; (2) whether the taxpayers are entitled to a deduction for the exhaustion or depletion of these leaseholds; and (3) whether or not the tax of these corporations should be computed for the year 1917 under the provisions of section 210 of the Revenue Act of 1917 and for the year 1918 under the provisions of section 328 of the Revenue Act of 1918. •
It is contended for the taxpayers that the leaseholds mentioned were acquired (pursuant to options) by the Boston Collieries Corporation in exchange for $50,000 par value of its capital stock. It is further contended that the value of the leases so acquired was at least $50,000, and that this amount should be included in the invested capital of the taxpayers.
The Boston Collieries Corporation was organized on or about March 1, 1917. It issued capital stock in the amount of $100,000, all of which was issued to Charles E. Andrews, J. A. Beam, F. B. Layton, and Bishop L. Wallace. For this stock $50,000 was paid in in cash, and the question to be determined is whether or not anything further was received by the corporation for the stock. These leases show that they were made directly to the Boston Collieries Corporation by the owners of the land and could not have been exchanged for the stock of the corporation by the individuals mentioned above. Furthermore, Wallace testified that he and his associates did not own the leases, but procured verbal options to take the leases later. It thus appears that these so-called options were all that could have been exchanged for the stock, and the record fails to show that these options were valuable. No evidence was submitted to show the terms of these options, neither do the facts disclose any consideration therefor.
The taxpayers have not shown that anything of value was paid to the feoston Collieries Corporation, in addition to the $50,000 cash, for its capital stock. The Board is of the opinion, therefore, that the $50,000 alleged value of the leases was properly excluded from invested capital.
The evidence adduced discloses no value upon which an allowance should be made for exhaustion-or depletion of the Jeases. The leases *245 were not paid in for stock, and the taxpayers have not shown that anything of value was actually exchanged for them. The consideration recited by the leases is rents, royalties, covenants, and agreements. One of the leases provided for a royalty of 8 cents on each ton of coal mined and an annual rental of certain specified sums. It also provided that, any royalties paid during the year should be credited against the annual rental. The other lease provided for payment of a royalty of 5 cents per ton on coal mined from one tract of land and 8 cents per ton on coal mined from another, with a minimum annual royalty on 15,000 tons from each tract. It also provided for payment of advance royalties of $424 a year on the second tract, this amount to be credited against royalties on coal mined later. These leases do not show any cost which could be spread over the life of the leases. The taxpayers do not show that they have acquired in these leases anything of value which is subject to the provisions of the Revenue Act of 1917 or the Revenue Act of 1918, allowing deductions for exhaustion or for depletion.
The taxpayers contend that they are entitled to consideration and relief under section 210 of the Revenue Act of 1917 and section 328 of the Revenue Act of 1918, for the years 1917 and 1918, respectively. This claim is based upon the allegation that there are certain abnormalities affecting the invested capital and income of the taxpayers which prevent the Commissioner from satisfactorily determining their invested capital for the years in question, and that this is evidenced by a gross disproportion between the tax computed without the benefit of the relief sections and the tax computed by comparison with corporations engaged in a like or similar trade or business.
One of the abnormalities which the taxpayers contend was present in the business was good will purchased from the Bader Coal Co., a Maine corporation, but which was never capitalized. The taxpayers have attempted to show the value of this good will by capitalizing the earnings of the Maine corporation for the years 1911 to 1916, inclusive, on the basis of 7 per cent for tangibles and 10 per cent for intangibles. The Board is of the opinion that the taxpayers refuted their theory of intangible values, based on earning power, by their efforts to show the large profits for the years in question resulted wholly from the personal activities of their officers.
It is also contended that the salaries paid during the years 1917 and 1918 were abnormally low, but, for the year 1917, no evidence was submitted with reference to salaries paid by the Boston Collieries Corporation, and for neither year did the taxpayers show what normal salaries were.
For the year 1918 special relief was claimed for the additional reason that the Tidewater Transportation Co., which was affiliated for the year 1918, was classified as a corporation without any in *246 vested capital or only a nominal capital for the year 1917, and was not classified as a personal service corporation for the year 1918. No evidence was submitted, however, to show that the Tidewater Transportation Co. had any income for 1918 or that the income of the taxpayers was in any way increased as the result of the affiliation.
The final reason advanced by the taxpayers for special relief was that their invested capital was not used in their business. It appears that coal was purchased on 30 and 60 day terms and sold for cash, and that under this arrangement it was not necessary to use the invested capital in the business. The invested capital as determined by the Commissioner for the year 1917 was $409,510.36, and it has not been shown that the tax computed on the basis of that amount of invested capital is disproportionate to the tax if computed by •reference to the tax of representative corporations engaged in a like or similar trade or business.
For the year 1917 evidence was submitted showing the invested capital, gross sales, net income, salaries, and percentage of profits tax to net income of the Fort Pitt Coal & Coke Co. and the Bixler Coal & Coke Co., which were engaged in the coal brokerage business. These corporations are not proper comparatives, since in both cases the tax was determined under the provisions of section 210. Furthermore, the fact that the Boston Collieries Corporation was not engaged in the coal brokerage business but in the operation of mines under the leases previously mentioned was not taken into consideration.
For the year 1918 the only comparative offered was the percentage of excess-profits tax to taxable income paid by the Bixler Coal Co. No evidence was submitted to show the invested capital, the gross income, the net income, or the amount of tax paid for the year 1918 by either the taxpayers or the Bixler Coal Co.
The claim of the taxpayers for relief under section 210 of the Revenue Act of 1917 and under section 328 of the Revenue Act of 1918 for the years 1917 and 1918, respectively, must therefore be denied.